STATE, USE OF ANNA DI NARDI MORET *vs.* THE
SOUTH BALTIMORE CAR WORKS.

*Negligence of Fellow Servant—Notice of Approaching Danger to Work-*
*men Under Car—Assumption of Risks.*

Plaintiff's deceased son was at work under a car in defendant's re-
pair yards when other cars arriving on the same track were pushed
against the former, setting it in motion and running it over the de-
ceased.   In an action to recover damages for the death so caused, the
evidence showed that it was the duty of defendant's yardmaster to des-
ignate the tracks upon which incoming cars should go and to give
warning to any men working under cars of the approach of a train, and
this custom was known to the deceased who had been employed at de-
fendant's works for two years.   At the time of the occurrence of the
accident the yardmaster neglected to give the usual warning.   Plain-
tiff's testimony showed that it is customary in many railway repair
shops to use a blue flag as a signal to protect men working under cars.
*Held*, that the yardmaster was a fellow servant with the deceased and
since the injury resulted from the negligence of a fellow servant the
plaintiff is not entitled to recover.

*Held*, further, that the personal warning of an approaching train which
it was the duty of the yardmaster to give to men working under cars was
as effectual a method of protecting them as the use of a blue flag, cus-
tomary in some shops, and even if it were not, yet the deceased had
knowledge of defendant's method of carrying on its business and as-
sumed the obvious risks incident to that method as well as the risk of
the negligence of a fellow servant not proved to have been incompe-
tent.

Appeal from Baltimore City Court (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHUMCKER, JJ.

*Edward I. Koontz* (with whom were *Geo. Whitelock* and *Robinson & Boyd* on the brief), for the appellant.

In *Deni* v. *Pa. R. Co.*, 181 Pa. St. 525, the Court erred in the statement that there was no English precedent for suit by a non-resident alien. See *Davisson* v. *Hill*, 70 Law Journal Reports, 788, where it was held, no one dissenting, that a non-resident alien may bring suit under LORD CAMPBELL'S Act for damages for the death ·of a non-resident alien. In passing on the question, which presented no difficulties to the King's Bench Division, it was observed that, if the deceased had lived, he could, beyond question, have himself maintained the action. ·

Our statute itself furnishes the sole requirement for the right to bring suit, in the provision that, whenever death shall be caused by an act which, if death had not ensued, would have entitled the injured person to maintain an action, the person who occasioned the act shall be liable to an action. There is nothing in the language of the statute to limit its remedial provisions to citizens of the State of Maryland or to citizens of this country, and there is no sound reason for holding that non-resident aliens are excluded. The fact that the defendant would otherwise be able to escape liability altogether, by employing alien laborers, is a sufficient answer to the contention of the appellee. ` *Vetaloro* v. *Perkins*, 101 Fed. Rep. 393; *Mullhall* v. *Fallon*, 57 N. E. Rep. 386; *Bonthron* v. *Phœnix Light, etc.*, 61 L. R. A. 563 (Arizona). The cases last cited contain extensive reviews of the question and careful analyses of the authorities. They not only expressly overrule the Pennsylvania case but they demonstrate that the highest dictates of justice and judicial recognition of the soundest public policy demand that this Court onght not to read into our statute a restriction of the remedy or of the persons who may be equitable plaintiffs, contrary to the express terms of the law itself.

If the ruling of the Court below is correct, the appellee is entirely exempt from any legal duty to show why, according to the undisputed evidence of Angelo Moret, no whistle was blown, no bell rung, and no warning of any kind given to him and his brother, who had looked, but had seen no engine, before, in obedience to orders, going under the cars, where they could see nothing but their work, and whence they could both have escaped with safety had they been warned. Not a word of explanation is vouchsafed for the sudden and fatal transformation, without the least warning or rule for warning, of the narrow and confined space under the draw-head of the car beneath, which Antonio was working, from a place of present security into a death-trap from which escape was impossible. *Pool* v. *S.Pac.*, 20 Utah, 219.

Eight practical railroad men testified as to the long-established rule in railroad repair shops to the effect that a blue flag should be placed on a car while it is in course of construction or reparation, and that such flag should in this instance have been on the front service car. Shipley, the fireman, stated that the character of the work in no wise affected the rule as to signals.

The master is liable for negligence in respect of such acts and duties as he is required to perform as master, without regard to the rank or title of the agent intrusted with their performance. *Farwell* v. *B. & W. R. R.*, 4 Metc. 49. That doctrine was applied, though not formulated, in *Coulbourn's case*, 69 Md. 360, where a pay-car was started without warning to the employee. *Railroad* v. *Lavalley*, 36 Ohio St. 226; *Luebke* v. *C. & M.*, 59 Wis. 127; *Moore* v. *Railroad*, 85 Mo. 598; *Pool* v. *Southern Pac.*, 20 Utah, 220.

In the last four cases car repairers were killed under circumstances similar to those in the case at bar. There were no danger flags and no rules. In all of these cases it was held that it was the duty of the employer to make, adopt and enforce rules, and that the responsibility could not be evaded under the specious guise of the fellow-servant doctrine; the obligation being non-assignable. *Harlan, Dom Rel.*, 208. In

the Ohio case there were no rules, the men being in charge of a foreman, whose duty it was to see generally that proper precautions were taken.    In the Utah case it was held that the rules to be adopted should include flags.    In the Wisconsin case the Court went so far as to hold that a presumption of negligence arose from the accident itself under such circumstances.    Very slight authority should suffice for the proposition that a servant should not be held to assume the risk of his employer's negligence.

. The deceased assumed no risks except such as were reasonably incident to the service, and was warranted in relying upon the discharge by the appellee of its duty to furnish him a reasonably safe place in which to work.    *Am. & Eng. Ency.*, vol. 14, p. 855; *McKinney, Fellow Servant*, 73; *Strickling's case*, 88 Md. 504; *Russell's case*, 88 Md. 571; *Hough* v. *Railway*, 100 U. S. 214; *Coppins* v. *Railroad*, 122 N. Y. 562.

The danger to which he was exposed was not one which employees should be called on to look out for, but one which they may reasonably expect that proper precautions have been adopted to avoid.    *Baker* v. *Md. Coal Co.*, 84 Md. 29; *Moran's case*, 44 Md. 292.    It is indispensable to the employer's exemption that he must furnish the servant the means and appliances which the service requires for its efficient and safe performance, and, if he fails, he is as liable to the servant as he would be to a stranger, even though negligence of a fellow servant concur.    *Railroad* v. *Ross*, 112 U. S. 383; *Railroad* v. *O'Brien*, 161 U. S. 457; *Desernat case*, 178 U. S. 420.    Where the safety of a place depends on the adoption and enforcement of proper rules, the master is bound to make them and see that they are carried out.    *Am. & Eng. Ency.*, vol. 14, 908; *Eckhardt's case*, 90 Md. 188–9; *Anderson* v. *Bennett*, 19 Pac. Rep. 765.

Here there is no evidence that the appellee ever took a single step toward the adoption of any rule whatever for the protection of the lives of its men, and it was plainly the province of the jury to determine whether such warning as Mallonee, Smith or Claytor or any one else, might see fit to give was a

reasonably safe and sufficient precaution and a proper discharge by the appellee of its duty.    No fellow servant neglected any rule, because there is no evidence of any rule; and, if there was a rule; the jury, and not the Court, should have passed on its reasonableness. *Wright* v. *Railway*, 42 S. E. Rep. 913; *Abel* v. *Del., etc.*, 103 N. Y. 581; *Vose* v. *Railroad*, 2 H. & N. 728; *B. & O.* v. *Charvat*, 94 Md. 579.

It was at least for the jury to say whether the conduct of Smith constituted a rule of the company, difficult as it would have been to make such a finding.    If, however, it was a rule adopted and enforced by the company, in the face of the unanimous testimony of the witnesses and the universal opinion of all the Courts of last resort elsewhere, as to the necessity of signal flags, "we do not see how it was possible to say as matter of law that the rules of the defendant were proper and sufficient for the protection of its repairmen, and that it should not have taken greater precaution, by rules or otherwise for their safety.    103 N. Y. 587, *ante.*

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellee.

1. While there is much evidence of the use of the blue flag as a signal in *railroad yards and repair shops*, there is no evidence of its use in *the yards of car building companies.* The distinction between the two cases is manifest.    While in railroad yards and repair shops men are occasionally required to work underneath a car, it is not to be assumed in the absence of some signal that a car has a man underneath of it.    In a car building establishment, on the contrary, where the presence of workmen under the cars is a constant thing, there a car itself, especially a new car, is a signal of danger, and the possible, indeed probable, presence of a man under it, must always be had in mind.    Hence, common prudence will teach that on the private premises of a car building company, new cars should never be pushed, without first ascertaining that there is no workman underneath.    This shows why there is

no necessity for the blue flag in the yard of a car building company.

Next we must bear in mind that even if this blue flag signal may be used for the protection of car repairers or builders, it is not the only system by which they may be protected. If the car works in this case had, as the evidence shows, a yard-master, Smith, whose duty and practice it was to receive cars, direct them on which track to go and then give personal warning to any workmen in positions of peril, it will at once be seen that this method is equally efficacious with the blue flag system. One system seems to rely upon a flag and the other on a man, yet in the last analysis they come to the same thing, for the flag must be put in position by a man. A man may sometimes forget to give a warning, but he is just as liable, indeed we think more so, to forget to place a flag.

While the appellee may be under an obligation to adopt rules reasonably calculated to insure the safety of its employees, it is certainly not bound to adopt any particular rule, which somebody else may have adopted, who is engaged in a some-what similar, though not the same business. The only requirement is the adoption of a rule reasonably well calculated to accomplish the end in view, towit, the safety of the employee. Whether a rule is so sufficient is a question of law for the Court. *Little Rock R. R. Co.* v. *Barry*, 84 Fed. Rep. 949. Certainly this must be so in a clear and simple case like the one at bar, and the rule or practice by which the yardmaster, Smith, directed trains where to go, and gave personal warning to the men, cannot be improved upon provided only it is faithfully carried out.

This leads to our next proposition : The master has performed his full duty in this respect when he establishes the rule. He does not guarantee to each servant that the other servants will faithfully carry out such rules. In other words, the master cannot be charged with liability for an injury caused to a servant by reason of the failure of a fellow servant to carry out some rule. 12 *Ency. Law*, 962, 2 ed.; *Portance* v. *Lehigh*, 101 Wis. 574; *Rose* v. *Boston and Albany*, 58 N. Y. 217;

*Smith* v. *N. Y. Cent. R. R.*, 88 Hun. 468; *Kennelty* v. *B. & O.*, 166 Pa. St. 50.   In the first of the cases cited, this doctrine is applied to the specific matter of giving some necsssary warning against an approaching danger.   It is held that if the master has a competent man whose duty it is to give warning that he is not responsible for the failure of such man to actually give the warning in any particular instance.

Applying this rule to the present case, if the company had Smith, a competent man, whose duty and practice it was to receive the incoming trains and to give warning of their approach to workmen under the cars, it cannot be held liable because in this particular instance Smith failed to perform his duty.   An exactly similar principle was recently enunciated by this Court.   *National Enamelling Company* v. *Cornell*, 95 Md. 528.   Here it was said in discussing the master's duty to maintain safe machinery that he discharges the same when he employs competent.workmen to make necessary repairs.   He is not bound to go further and insure the actual making of the repairs.

There is nothing unnecessarily dangerous or in any way negligent in the system in use at the car works for the protection of men under cars.   Had the system been faithfully carried out as it always had been the accident could not have occurred.   At this particular time, however, Smith, the employee, failed to do that which was his custom, and that which his fellow workmen relied on him to do.   The case, therefore, is reduced to the familiar one of the negligence of a co-employee.

2. The second reason why the plaintiff cannot recover is that even if it is assumed that the failure to use the blue flag signal was negligent that the deceased through his long employment with appellee must be taken to have known of such negligent method, and thereby to have assumed any risk resulting therefrom.   The exact question has been passed upon, and this rule applied to the case of a car repairer while working without the blue flag.   *O'Rorke* v. *Union Pac. R. R. Co.*, 22 Fed. Rep. 189.

Nowhere is the general rule as to assumed risk more strictly applied than in Maryland. *Wood* v. *Heiges*, 83 Md. 268; *P. R. R.* v. *Wachter*, 60 Md. 395; *Eckhardt* v. *Lazaretto Guano Co.*, 90 Md. 189; *B. & P. R. R.* v. *State, use of Abbott*, 75 Md. 159–161; *State, use of Hamelin*, v. *Malster*, 57 Md. 312; *B. & O. R. R.* v. *Stricker*, 51 Md. 69; *B. & O. R. R.* v. *State, use of Woodward*, 41 Md. 268. The Maryland rule deduced from these cases clearly is that no matter how negligent the master may be in using unsafe appliances or methods, yet if the servant, with knowledge of such negligence, continues in the employment, he assumes all risk of injury resulting therefrom.

3. The real cause of this accident was not anything done or omitted by the appellee, but the independent acts of negligence on the part of the B. & O. employees in charge of the B. & O. train. This clearly appears from a reading of the statement of facts. The legal principle is stated in the leading Maryland case. *Reaney's case*, 42 Md. 117. The principle has been specifically applied to the case of two railroads using the same track, in the following decisions :. *Georgia R. R.* v. *Friddell*, 79 Ga. 489; *Clark* v. *C. B. & Q. R. R.*, 92 Ill. 46. Where two companies use the same track and an employee of one company is injured by the negligence of the employees of the other company, the latter company is alone liable.

4. The fourth reason why the equitable plaintiff cannot recover, rests on a special ground entirely different from any of the others. It is uncontradicted that she is and always has been a resident of the Kingdom of Italy, and has never been in this country.

It is well known, that at common law there was no action for negligence causing death, and the right to recover in such cases depends entirely on our statutes. While the language of these statutes, considered by itself, is broad enough to bring within its scope all parents, husbands, wives or children, wherever domiciled, it is a well-settled principle that our Legislatures pass laws for the protection of their own citizens and not of foreigners. Particularly is this true of a law like the one in question. Parents residing here, who lose the support

of their children, may become a charge upon the community, if the law does not give them some recompense. Parents who are non-resident aliens do not occupy the same favored po-' sition. It is not to be assumed that the Legislature intended to extend to them the benefits of these acts unless it be expressly so declared. This line of reasoning has been adopted in most carefully considered cases, and it has been held under statutes practically identical with ours, that they give no rights to non-resident aliens. *Deni* v. *P. R. R.*, 181 Pa. St. 525; *Brannigan* v. *Union Gold Mining Co.*, 93 Fed. Rep. 164; *Mc-Millan* v. *Spider Lake Saw Mill Co.*, 115 Wis. 332.

FOWLER, J., delivered the opinion of the Court.

Antonio Moret, a young Italian, was killed while in the employ of the South Baltimore Car Works.

The usual suit for damages soon followed. It was brought in the name of the State for the use of deceased's mother, Anna Di Nardi Moret.

In addition to the usual plea of the general issue, the defendant filed a second plea alleging that the time of the accidental death of her son and at the trial of the case below the equitable plaintiff was and still is a non-resident alien, being a resident of Italy. The plaintiff's demurrer to this plea was sustained; but at the close of her testimony in chief the jury were instructed that she had offered no evidence legally sufficient to entitle her to recover. Under this instruction there was a verdict and judgment for the defendant, and the plaintiff took this appeal.

It appears from the evidence that the defendant company is engaged in the manufacture, building and repairing of steam railway cars at Curtis Bay in Anne Arundel County, and that in connection with its works it has what is called a repair yard, in which there are a large number of railroad tracks, switches or sidings. On the occasion of the fatal accident which is the subject of this litigation a train consisting of an engine and three or four cars belonging to the Baltimore and Ohio Railroad Company and in charge of its employees, backed into

the defendant's repair yard for the purpose of delivering a quantity of material. The Baltimore and Ohio train went in on what is called the scale track which was generally used to deliver material unless orders were given to the contrary. Further down on this same track there were standing ten or more new cars under construction coupled together. Between the cars last mentioned and the Baltimore and Ohio train there were three service or box cars, and for the purpose of making room on the scale track, the box cars were pushed into contact with the ten new cars above mentioned. The result was that the latter were put in motion and the deceased, who was at work under one of them, was run over and killed.

It also appears from the evidence that it was the duty and the practice of John L. Smith, who was yardmaster to receive and discharge cars and to tell incoming engines on which tracks to go, and that it was also his invariable custom to give warning to any men working under the cars of the approach of a train. The employees of the defendant understood this and the brother of the deceased who was working with him at the time of the accident so testified, saying that they all relied upon Smith for warning and protection. It is conceded, or must be from the evidence, that Smith is a mere co-employee, and hence the familiar proposition is again presented, that if the injury resulted from the negligence of a co-employee there can be no recovery. But in the first place the contention of the plaintiff is that the direct and necessary cause of the accident was its failure to adopt and use the blue flag.

The testimony of a number of the witnesses was to the effect that it was customary in railway repair yards and shops to use a blue flag as a signal to protect men working under cars, and one of the witnesses said that where the flag is used for that purpose it is placed on the draw-head of the car about three and a-half feet from the ground. No such device was used by the defendant; but as we have seen, it was the duty and practice of one of its employees instead of using the blue flag which never was used by the defendant to give

personal warning of approaching danger.    It can hardly be said as a matter of law that such a system or custom does not afford quite as much protection as the use of a blue flag. The man whose duty it is to place the flag, as well as the man whose duty it is to give the personal warning may forget to perform his duty, and in either case injury or as in this case, unfortunately, death may follow.    In other words, both systems would doubtless be eminently successful and afford ample protection provided they are faithfully administered.    If we are correct in this conclusion it must follow there can be no recovery in this case, for the defendant having made reasonable and proper arrangements for the protection of its employees, it is not responsible nor does it guarantee to each that the other co-employees will faithfully carry out such arrangements.    Or, as is said in 12 *Am. & Eng. Ency. of Law*, 967, (Fellow Servants) "when the duty of establishing and promulgating proper rules and regulations has been performed, the master's responsibility is at an end; he cannot be charged with liability to one servant for the failure of another servant to comply with prescribed rules and regulations."    This rule is well established and many cases are cited on the page above mentioned of the Encyclopædia to sustain it.    A similar principle, however, will be found in *Nat'l. Enameling Company* v. *Cornell*, 95 Md. (opinion by Boyd, J.) where it is said that in Maryland, whatever the rule may be elsewhere, it is settled that when the master has furnished his employee proper and safe machinery and instrumentality with which to work, his duty is fulfilled, provided he employs competent servants, and he will not be liable to them for damages caused by injuries resulting from their negligent use of or failure to repair such instrumentalities.    It follows, therefore, that, as was said in the case just cited, that the defendant is not responsible to an employee for the negligence of a fellow servant—"the negligence in that respect being one of the risks assumed by the servant when he enters the service of the master."

And, finally, this brings us to the brief consideration of another reason why there can be no recovery in this case—even

if it could be assumed that there was a failure on the part of the defendant to prescribe and promulgate a reasonably effective system by flag or otherwise to protect the deceased while he was working in a perilous place. That reason is that under the circumstances of this case the deceased must be taken to have assumed the risk resulting from such a careless or negligent system. He had been employed by the defendant for about two years and during all that time according to the testimony of his brother, the system of personal notice by a fellow servant to avoid danger was in force. Under these circumstances, as was said in *Wood* v. *Heiges*, 83 Md. 268, "If a servant has knowledge of the circumstances under which the employer carries on his business and chooses to accept the employment, or continue in it, he assumes such risks incident to the discharge of his duties as are open or obvious. In such cases it is not a question whether the place prepared for him to occupy and which he assents to accept, might, with reasonable care, have been made more safe. His assent dispenses with the performance on the part of the master of the duty to make it so." It is needless to say that it is apparent from all the evidence that the risks to which the deceased was subjected were well known to him and obvious to all. As one of the witnesses said they were constantly warned of the danger and therefore they knew it as well as they knew anything else of which they had constant experience. And in the more recent case of *Eckhard* v. *Lazaretto Guano Co.*, 90 Md. 189, this seemingly harsh rule is announced and strictly enforced. It is so well settled, however, that it need not be fortified by the citation of any further authorities. There is a striking application of this rule in *O'Rorke* v. *Union Pac. R. R. Co.*, 22 Fed. Rep. 189, opinion by BREWER, J., in the Circuit Court District Colorado—where it would seem that a red and not a blue flag is used to protect one working in a place of danger under a car.

It follows that this case was properly taken from the jury and the judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided June 9th, 1904.)