THE NORTHERN CENTRAL RAILWAY COMPANY
   *vs*. STATE OF MARYLAND, TO THE USE OF FANNY
   WILSON, WIDOW OF ALBERT T. WILSON, DECEASED,
   VELMA WILSON, VILO WILSON AND VENIZ WILSON,
   INFANT CHILDREN OF ALFRED T. WILSON, DECEASED.

*Negligence: employer and employee; duty of employee; con-
   tributory negligence. Railroads: height of bridges;
           a part of signal towers over tracks.*

No negligence can be imputed to a railroad company because
   the struts of a bridge are not high enough to allow a person
   to pass under them while standing upright on top of the
   cars.                          p. 492

There is an implied contract between an employer and an
   employee that the latter will take upon himself all the nat-
   ural risks and perils incident to the service.        p. 492

A brakeman on a freight train while walking or standing on
   the top of a car was injured by being struck by a projection,
   part of a signal tower.   The uncontradicted evidence was
   that the brakeman had passed the signal tower twenty-five
   times a month for several years; that the tower was in full
   view for over 600 yards as the train approached it, and that
   the brakeman had had an unobstructed view of the tower for
   sometime previous to the accident while the train was stand-
   ing at a watering tank; it also appeared by the uncontradicted
   testimony that the brakeman was standing or walking facing
   the rear of the train and that he had failed to follow a rule
   of the company that he should observe the signals of the
   tower as his train approached.   *Held*, that he was guilty of
   contributory negligence and that the case should have been
   withdrawn from the jury.                p. 493

*Decided February 28th, 1912.*

Appeal from the Circuit Court of Harford County (BURKE, J.).

The following are the prayers referred to in the opinion of the Court:

*Plaintiff's 1st Prayer.*—The Court instructs the jury that if they find from the evidence in this case that the defendant operated a railroad in part through Baltimore county, in the State of Maryland, and at or near Phœnix Station, one of its stations in said county and State, on the east side of its railroad tracks at this point, maintained a signal tower as part of its railroad structure and for railroad purposes, and upon the west side of said tower a platform; and if the jury further find that Albert T. Wilson, the husband of the equitable plaintiff, Fanny Wilson, and the father of the equitable plaintiffs, Velma Wilson, Viola Wilson and Venia Wilson, was, on June 6th, 1910, in the employ of said defendant as brakeman and while engaged in the line of his employment was upon a box or freight car, attached to an engine, the property of the said defendant, proceeding north on a northbound trip from Baltimore City; and further find that his body, as said car passed said platform, came in contact with the same in consequence of the dangerous and unsafe position of said platform (if the jury find the same was dangerous and unsafe), and in consequence of said dangerous and unsafe position of said platform the said Albert T. Wilson received injuries which directly resulted in his death; and if the jury further find that the deceased was ignorant of the dangerous and unsafe position of said platform, if they find the same was dangerous and unsafe, and could not by the use of ordinary care and prudence on his part have known the same; and shall further find that at the time of the said injury the deceased was using ordinary care and caution on his part; and shall further find that the equitable plaintiff, Fanny Wilson, was induced to accept the death benefit under the policy mentioned in the defendant's additional plea, amounting to $500.00, and the disablement benefit of $2.00, mentioned in

said plea, by reason of the fraud or false representations of the defendant; and shall further find that the said equitable plaintiff, Fanny Wilson, was induced to sign the release offered in evidence by reason of the fraud or false representations of the defendant, then their verdict must be for the plaintiff. (*Granted.*)

*Plaintiff's 2nd Prayer.*—The Court instructs the jury that if they find their verdict for the plaintiff, they may, in estimating the damages to be allowed, consider what was the pecuniary loss which the said Fanny Wilson, widow, has sustained by reason of the negligent killing of her said husband, and may consider the reasonable probabilities of the continuance of the joint lives of the said Albert T. Wilson and Fanny Wilson but for said negligent killing of her husband, and may allow her such damages as in their judgment would compensate her for such pecuniary loss, as she has sustained, and reasonably will sustain by reason of said killing of her husband; and in estimating the damages which the said minor children, Velma Wilson, Viola Wilson and Venia Wilson, have each sustained, and will each sustain, they may consider what pecuniary loss they have each sustained by reason of the negligent killing of their father, the said Albert T. Wilson, the prospective damages to be estimated up to the respective majorities of each of said children; and that the jury shall by their verdict find and direct what shall be the share of the said widow and what shall be the share of each of said minor children, of the amount of their verdict. (*Granted.*)

*Defendant's 1st Prayer.*—The defendant prays the Court to instruct the jury that under the pleadings in this case and upon the undisputed evidence in this case the death of Albert T. Wilson, complained of in this case, was not caused by any wrongful act, neglect or default of the defendant which, if death had not ensued, would have entitled the said Albert T. Wilson to maintain an action and recover damages in respect thereof against the defendant; and therefore there

can be no recovery in this action, and the verdict of the jury
must be for the defendant. (*Refused.*)

*Defendant's 2nd Prayer.*—The defendant prays the Court
to instruct the jury that under the pleadings in this case
there is no evidence legally sufficient from which they can
find that the death of Albert T. Wilson, complained of in
this case, was caused solely by any wrongful act, neglect or
default on the part of the defendant without any negligence
on the part of the said Albert T. Wilson directly contribut-
ing thereto, and therefore the verdict of the jury must be
for the defendant. (*Refused.*)

*Defendant's 3rd Prayer.*—The defendant prays the Court
to instruct the jury that under the pleadings in this case
there is no evidence in this case legally sufficient from which
they can find that the death of Albert T. Wilson, complained
of in this case, was caused by any wrongful act, neglect
or default of the defendant which, if death had not ensued,
would have entitled the said Albert T. Wilson to maintain
an action and recover damages in respect thereof against the
defendant, and therefore there can be no recovery in this
action and the verdict of the jury must be for the defend-
ant. (*Refused.*)

*Defendant's 4th Prayer.*—The defendant prays the Court
to instruct the jury that there is no evidence in this case
legally sufficient to entitle the plaintiffs to recover in this
action and the verdict of the jury must be for the defend-
ant. (*Refused.*)

*Defendant's 6th Prayer.*—The defendant prays the Court
to instruct the jury, as matter of law, under the pleadings
in this case, that the only obligation upon the defendant to
its employees engaged in running trains over its road, in
the erection and maintenance of the platform on its signal
tower mentioned in evidence, was to erect and maintain it,
so that the employees of said defendant in the discharge of
their duties, could pass under or by said platform in safety
by the use of ordinary care and prudence; and that there is
no evidence in this case legally sufficient from which the

jury can find that said platform was so negligently erected and maintained that the said employees could not pass by or under it in safety in the discharge of their duties, by the use of ordinary care and prudence on their part and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's 9th Prayer.*—The defendant prays the Court to instruct the jury, under the pleadings in this case, as matter of law, that since by the undisputed evidence in this case, the deceased, Albert T. Wilson, the husband and father of the equitable plaintiffs, respectively, was employed by the defendant as brakeman and has passed the platform supporting the signal pole on the defendant's tower at Phoenix, mentioned in the evidence, as such brakeman as many as twenty-five times a month from June 4th, 1907, to June 6th, 1910, on the defendant's trains; and was required by the rules of the defendant for whom he was brakeman to look at the signal on the signal pole on said platform every time he passed said tower; and since by the undisputed evidence said platform was open and obvious to any one on defendant's road approaching said tower from the south from any point within a distance of eight hundred feet measuring from said tower southward; the law presumes that said Albert T. Wilson knew that said platform was on said tower, and imputes to him and presumes knowledge on his part of all risks and dangers to be encountered by him in the performance of his duties for the defendant resulting from the existence of said platform on said tower; and since there is no evidence in this case that the defendants were requested to remove said platform by the deceased or any one else prior to the accident complained of in this case, the deceased assumed all risks and dangers attending the presence of said platform, while he was in the employ of the defendant performing his duties, and therefore there can be no recovery in this action and the verdict of the jury must be for the defendant. (*Refused.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE and THOMAS, JJ.

*Shirley Carter* (with whom were *Bernard Carter & Sons* and *Thomas H. Robinson* on the brief), for the appellant.

*Edward H. Burke* (with whom were *W. Worthing Hopkins* and *H. Courtenay Jenifer* on the brief), for the appellees.

BRISCOE, J., delivered the opinion of the Court.

The record in this case contains two bills of exceptions, one to review the rulings of the Court below on the prayers and the other to consider its rulings on the admissibility of evidence.

At the trial of the case, the Court below granted the plaintiffs' two prayers, overruled the defendant's special exceptions to those prayers, and refused to grant the defendant's nine prayers.

The defendant's first, second, third, fourth, sixth and ninth prayers were demurrers to the evidence, and in substance, asked the Court to instruct the jury that, as matter of law, there was no evidence legally sufficient, under the pleadings, to entitle the plaintiff to recover, and, therefore, the verdict must be for the defendant.

The suit was brought in the Circuit Court for Baltimore County, by the plaintiff against the defendant, to recover damages for the death of Albert T. Wilson, on June 7th, 1910, the husband and father of the equitable plaintiffs while in the employ of the appellant corporation and engaged at the time of the accident as brakeman on a freight car attached to an engine of the defendant, on a northbound train from Baltimore City to Harrisburg, Pa., and caused by the alleged negligence of the defendant.

The declaration, in substance avers, that the defendant corporation, at the time of the commission of the injuries complained of, was operating a railroad in part

through Baltimore county in the State of Maryland, and Albert T. Wilson, the husband and father of the equitable plaintiffs, was employed by it as brakeman; and then and there, at the time of the commission of the wrongs complained of, it became the duty of the defendant corporation to provide a reasonable safe place for him to perform his duties as a brakeman; that the defendant negligently and carelessly failed and omitted to provide for him a reasonably safe place in which to perform his duties in that the defendant corporation negligently and carelessly permitted a platform constructed on a certain signal tower, used by the defendant corporation for railroad purposes and located upon the east side of its railroad tracks at or near Phoenix Station, in Baltimore county and State, one of the stations of the defendant corporation, to be and extend so far over and near the tracks as to strike him, and thereby inflict and cause to be inflicted upon him such injuries and wounds as to cause his death; that at the time he was struck by said platform, he was upon a certain box car or freight car attached to an engine, the property of the defendant corporation, running north on a northbound trip from Baltimore City, and was, in being upon the car, engaged in the performance of his duties as a brakeman, and was using all due care and caution on his part; and that his death was due to the carelessness, negligence and default of the defendant corporation, and without any want of care on his part.

The bill of particulars, filed in the case states, that the immediate cause of Wilson's death was a platform constructed on the side of the signal tower at Phoenix, Baltimore county, Maryland, with which platform he came in contact while engaged in the performance of his duties as brakeman, and while using due care and caution on his part. The liability of the defendant corporation arises out of its negligent failure to provide for him a reasonable safe place in which to perform his duties as a brakeman.

The case was removed to the Circuit Court for Harford County, and after trial resulted in a verdict for the plaintiffs, and from the judgment entered thereon, this appeal has been taken.

As we are of opinion, after a very careful consideration of the record now before us, that there was error in the rulings of the Court in granting the plaintiff's prayers, and in rejecting the defendant's first, second, third, fourth, sixth and ninth prayers which withdrew the case from the consideration of the jury, and as these prayers (which will be set out by the Reporter) present the important propositions upon which the ultimate decision of the case must turn, the remaining questions raised on the record become unimportant and will not be considered by us.

The accident which resulted in the death of Wilson, happened about 11:05 A. M. on the morning of June 5th, 1910, at and near Phoenix Station, in Baltimore county, one of the regular stations of the appellant corporation, on its railroad between Baltimore City and Harrisburg, Pa. The railroad at the point where the accident occurred runs north and south, and the deceased at the time he was struck, was upon a box or freight car, attached to an engine running north, on the north-bound main track from Baltimore. At Phoenix. east of the main tracks, is a passenger station, freight house and platform, and the station agent's dwelling. A public road, running east and west, crosses the main tracks a little north of the passenger station.

At the north of the public road, and east of the main tracks, the appellant sometime prior to 1895, erected just north of Phoenix Station, a signal tower and platform. The tower was a wooden building two stories in height, and from the tower to the east rail of the north-bound track was eight feet and one inch. The platform was between the first and second stories of the tower and was four feet wide running north and south across the front of the tower

and projected five feet ten inches from the face of the tower.

The testimony on the part of the plaintiff shows that on the morning of the accident the deceased was seen, as the freight train approached the tower, "on the first or second steps from the top of a ladder, on the north end of a freight or box car, which was used in ascending or descending from the top of the car. He was on the ladder supposed to be going up and looking back to the rear end of the car when his head came in contact with the platform on the signal tower, and he was knocked on the top of the car, and afterwards fell to the ground. The train was running at an estimated speed of about eight to twelve miles an hour.

The plaintiff's witness, Weller, testified that Wilson was a brakeman on the train, and had worked under the witness as such, from June 6th, 1907, until the date of accident on June 6th, 1910, a period of three years, and had passed the platform and tower during that time, with the witness on the trains, going up and coming down, at least twenty-five days in each month; that the platform was on the tower when it was erected and witness had never known any one to be struck by it, nor did he known it was close enough to hit any one on the train. He further testified, that by the rules of the company, persons on the train including brakeman, fireman and conductor, were required to look for the signals from the tower while the trains approached and passed it. "According to the rules, they are looking out for their own safety in that case."

The testimony of the carpenter, Dayhoff, was to the effect, that both from the measurements made by him the day of the accident, and by the measurements made to cars standing in a train on the track in front of the tower, some days before the trial of this case, that the platform did not extend far enough from the tower to overlap the edge of cars on the track in front of the tower, even making liberal allowance for the slight difference in the level of the front

of the tower on the day of the accident and the day the measurements were made with the cars actually on the track.

While there was testimony tending to show that the front of the tower had settled three inches, in the first two or three years after it was built and there were two wooden brackets or beams, which projected six inches from the north and south edges of the platform and towards the track, which had been placed there for ornamental purposes, yet the undisputed evidence is, that there had been no change in the position of the platform and tower during the time Wilson was in the employ of the company and that the platform did not so overlap the passing cars as it could not be passed in safety by employees on the trains by the exercise of ordinary care and prudence. The platform had been in use since the year 1895, and the deceased had passed it in safety at least twenty-five days in each month in going south and north over the defendant's road, while performing his duties as brakeman. The platform, also, was open and obvious, and was plainly visible to any one approaching the tower on a north-bound freight train for a distance of over two hundred yards. The deceased had ample space on the car to stand or sit without coming in contact with the platform and no negligence can be imputed to the company, even if it be assumed, that the platform was not high enough to allow a person to pass under it, while standing on top of the car or while occupying the position of the deceased on the car, at the time of the accident, as testified to by the plaintiff's witnesses.

We think, without reviewing the authorities at length, that the cases of *B. & O. R. R. Co.* v. *Stricker*, 51 Md. 47; *Yates* v. *McCullough*, 69 Md. 370; *Abbott* v. *B. & P. R. R. Co.*, 75 Md. 152; *State, use of Hamelin*, v. *Malster*, 57 Md. 287; *Wood* v. *Heiges*, 83 Md. 268; *Egner* v. *Rwy. Co.*, 98 Md. 397, and the more recent cases of *Morel* v. *Car Works Co.*, 99 Md. 472, and *Tkac* v. *Md. Steel Co.*, 101 Md. 179; *Gans Salvage Co.* v. *Byrnes*, 102 Md. 247; *Winter* v. *United Ry.*,

115 Md. 72, are applicable here, and conclusive against the right of the plaintiffs to recover in this case.

In *Stricker's Case, supra,* JUDGE BARTOL, in delivering the opinion of this Court, said: "To entitle the appellee to maintain this suit it was necessary to prove that the company had been guilty of negligence which directly caused the injury—that is to say, that in the relation which existed between the appellee and the company, the latter had failed or neglected to perform some duty towards the appellee which was devolved upon it by law; and secondly, it must appear that the appellee was not guilty of any negligence on his part, or any want of reasonable prudence and caution to avoid the accident.

1st. As to the alleged negligence on the part of the company. In what did this consist? It was said it was negligent in constructing the bridge so low that a conductor or brakeman could not pass under it in safety, on top of a house car where his duty required him sometimes to be.

But there is no evidence to support this position; on the contrary, all the proof shows that the employees of the company and the appellee among them, every day passed under the bridge safely by observing the simple and easy precaution of stooping or sitting down while passing under the bridge.

No negligence can be imputed to the company because the struts of the bridge were not high enough to allow a person to pass under them, standing upright on the top of the cars. *Baylor* v. *R. R. Co.,* 11 Vroom, 23.

It was not required of the appellee to stand on his feet, while passing the bridge; he was in that position, according to his own statement, because his back was turned towards the bridge; "he did not think of it, and did not know he was near it;" but he knew it was there; it was in full view only a few moments before, when he started his train from a point only two hundred or three hundred yards distant.

Nothing is better settled than that "the implied contract between the employer and employee is that the latter take

upon himself all the natural risks and perils incident to the service." *Moran's Case,* 44 Md. 292. As expressed by COCKBURN, C. J., in *Clarke* v. *Holmes,* 7 H. & N. 943. "When a servant enters upon an employment he accepts the service subject to the risks incidental to it."

We have thus quoted at length from *Stricker's case,* because the facts of that case are almost identical with the facts of the case at bar, and the principles of law announced in that case are not only applicable here, but have been approved and applied in similar and later cases decided by this Court.

In the case now before us, we are of opinion there was a failure of evidence to prove such negligence on the part of the defendant or its agents, as alleged in the pleadings, to entitle the plaintiffs to recover and there was a legal insufficiency of eivdence to show that the death of Wilson was caused by the failure of the appellant to discharge any of its legal duties towards him.

On the contrary, the evidence shows, that the deceased directly contributed to the accident which caused his death by his own negligence and want of care, in failing to notice the platform as he approached the tower, and in violation of a duty which required him to observe the signals on the tower, for his own safety and that of his train.

The evidence is undisputed that at the time of the accident he was facing the rear of the train looking south with his back to the platform and tower, although he had an unobstructed view of the platform of over two hundred yards from the time the train left the water tank, until it reached the tower.

Whether he was standing on the ladder at the end of the car, as testified to by the plaintiff's witnesses or was walking on the top of the box car, as stated by some of the defendant's witnesses, at the time of the accident, it is immaterial, because in either position he was clearly guilty of such contributory negligence, under the facts of this case, as to bar a recovery.

As this conclusion disposes of the case, it will not be nec-
essary for us to consider the other questions raised on the
record.  For the error in granting the plaintiff's prayers and
in rejecting the defendant's prayers, which sought to with-
draw the case from the consideration of the jury, the judg-
ment will be reversed, and as it is apparent the appellees
can not recover, a new trial will not be awarded.

> *Judgment reversed, without awarding a
> new trial, with costs.*